Robert J. Herrington (SBN 234417)
*herringtonr@gtlaw.com*
Michael E. McCarthy (SBN 301010)
*mccarthyme@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendant
HAIER US APPLIANCE SOLUTIONS INC. d/b/a GE APPLIANCES

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHARLES DRAKE, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>HAIER US APPLIANCE SOLUTIONS INC.,<br><br>          Defendant. | CASE NO. 3:23-CV-00939-VC<br><br>Hon. Vince Chhabria<br><br>**DEFENDANT HAIER US APPLIANCE SOLUTIONS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Request for Judicial Notice filed concurrently]<br><br>DATE: July 13, 2023<br>TIME: 10:00 a.m.<br>PLACE: 450 Golden Gate Avenue, Courtroom 4<br>          San Francisco, CA 94102<br>JUDGE: Vince Chhabria<br><br>Action Filed: March 2, 2023 |

## <u>NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2023, at 10:00 a.m.,[1] in Courtroom 4 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Haier US Appliance Solutions Inc. d/b/a GE Appliances ("GEA") will move this Court for an Order dismissing the claims in Plaintiff Charles Drake's Complaint under Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(1). This Motion is made on these grounds:

(1)  All Drake's claims should be dismissed because he has not pled an actionable "defect" or injury in fact.

(2)  All Drake's claims should be dismissed because they are preempted by the Energy Policy and Conservation Act (42 U.S.C. §§ 6291 *et seq.*).

(3)  Drake has not stated a claim for common law fraud or violation of any state consumer protection statute because these claims sound in fraud, but Drake does not allege the claims with particularity.

(4)  Drake has not stated a claim for common law fraud or violation of any state consumer protection statute based on omission because he does not allege facts showing that GEA had pre-sale knowledge of any specific "defect."

(5)  All the fraud-based claims should be dismissed because Drake is improperly attempting to "plead around" the mandatory pre-suit requirements of California Proposition 65.

(6)  Drake's "multi-state" consumer protection claim is conclusory, and he lacks standing to invoke the consumer protection laws of any state besides California.

---

[1] Following paragraph 8 of the Court's Civil Standing Order, counsel conferred about a mutually convenient hearing date and briefing schedule. By Stipulation and Order, Plaintiff's opposition to GEA's Motion is due June 1, 2023, GEA's reply is due June 22, 2023, and the hearing is July 13, 2023, subject to the Court's decision on whether to hold a hearing following review of the papers. (Order, Dkt. 19.)

(7)  All Drake's implied warranty claims should be dismissed because he does not allege that his stove is unmerchantable or that it lacked fitness for any particular purpose.

(8)  Drake's implied warranty claim under the Uniform Commercial Code also should be dismissed for lack of privity.

(9)  Drake does not state any equitable claim or request for relief because he alleges an adequate legal remedy in the form of money damages.

(10) Drake's unjust enrichment claim also fails because it is duplicative of his deficient, underlying tort and statutory claims.

(11) All requests for injunctive relief in the Complaint should be dismissed because Drake does not allege facts showing a concrete, imminent threat of future injury.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and exhibits, all pleadings, and upon such other oral or written materials as may be presented to the Court at or before the hearing on this Motion.

Following paragraph 27 of the Court's Civil Standing Order, GEA is not submitting any proposed order on this Motion.

Dated: May 3, 2023                    GREENBERG TRAURIG, LLP


                                       By: */s/ Robert J. Herrington*
                                           Robert J. Herrington
                                           Attorneys for Defendant
                                           HAIER US APPLIANCE SOLUTIONS INC.
                                           d/b/a GE APPLIANCES

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND STATEMENT OF ISSUES (CIV. L.R. 7-4(A)(3)) ................................ 1

II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS ........................................................ 2

III.   ALL DRAKE'S CLAIMS SHOULD BE DISMISSED .................................................. 4

    A.    Motion to Dismiss Standard............................................................................. 4

    B.    Drake Has Not Pled an Actionable "Defect" or Cognizable Injury......................... 4

    C.    Drake's State-Law Claims Also Are Preempted by EPCA. .................................. 6

    D.    Drake's Fraud and Consumer Protection Claims Fail for at Least Four More Reasons....... 8

        1.    Drake's fraud-based claims should be dismissed because they are vague and conclusory. ............................................................................................ 8

        2.    Drake has not alleged how GEA knew of any specific (unproven) health effects that he claims result from normal cooking with a gas stove. .................................. 9

        3.    Drake is trying to evade Proposition 65 (Cal. Health & Safety Code §§ 25249.5 *et seq.*). .............................................................................................. 11

        4.    Drake's boilerplate "multi-state" consumer protection claim adds nothing, and he lacks standing to invoke the laws of any state besides California. ....................... 12

    E.    The Implied Warranty Claims Do Not Allege Facts Showing Any Breach. ................... 12

    F.    All of Drake's Claims for Equitable Relief Are Subject to Dismissal. ........................... 13

        1.    Drake seeks actual damages and pleads an adequate legal remedy...................... 13

        2.    Drake's unjust enrichment claim fails to allege GEA did anything unjust............ 14

        3.    Drake lacks standing to pursue injunctive relief.................................... 15

IV.   CONCLUSION........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Bev. Ass'n v. City & Cnty. of S.F.*,
  916 F.3d 749 (9th Cir. 2019) ..................................................................................................7

*Amans v. Tesla, Inc.*,
  2022 WL 2952474 (N.D. Cal. July 26, 2022) ........................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................4

*Azoulai v. BMW of N. Am. LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .............................................................4, 6, 8, 9

*Bird v. First Alert, Inc.*,
  2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ..........................................................................9

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ..............................................................................................4, 13

*Cal. Rest. Ass'n v. City of Berkeley*,
  2023 WL 2962921 (9th Cir. Apr. 17, 2023) .....................................................................6, 7, 8

*Canlas v. United States Dep't of the Treasury*,
  2020 WL 6684851 (N.D. Cal. Nov. 12, 2020) .........................................................................4

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
  2017 WL 86033 (N.D. Cal. Jan. 10, 2017) .............................................................................10

*Davidson v. Apple, Inc.*,
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ...........................................................................9

*Effinger v. Ancient Organics LLC*,
  2023 WL 2214168 (N.D. Cal. Feb. 24, 2023) ........................................................................12

*Fonseca v. Goya Foods, Inc.*,
  2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .........................................................................14

*Forsher v. Frank Brunckhorst Co., LLC*,
  2019 WL 13201945 (N.D. Cal. Nov. 7, 2019) ........................................................................12

*Goldsmith v. Allergan, Inc.*,
  2010 WL 11463630 (C.D. Cal. Feb. 24, 2010) .......................................................................13

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
  2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) ...................................................................11, 12

*Guzman v. Polaris Indus.*,
    49 F.4th 1308 (9th Cir. 2022) ........................................................................14

*Hamm v. Mercedes-Benz USA, LLC*,
    2022 WL 913192 (N.D. Cal. Mar. 29, 2022)..................................................14

*Hanna v. Walmart Inc.*,
    2020 WL 7345680 (C.D. Cal. Nov. 4, 2020)..................................................11

*Harris v. R.J. Reynolds Vapor Co.*,
    2016 WL 6246415 (N.D. Cal. Sept. 30, 2016) ...............................................11

*Hauck v. Advanced Micro Devices, Inc.*,
    2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ..................................................10

*In re Arris Cable Modem Consumer Litig.*,
    2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...................................................8, 9

*In re NJOY Consumer Class Action Litig.*,
    2015 WL 12732461 (C.D. Cal. May 27, 2014) ...........................................10, 11

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ...............................................10

*Jurgensen v. Felix Storch, Inc.*,
    2012 WL 2354247 (S.D.N.Y. June 14, 2012) ...............................................7, 8

*Kahn v. FCA US LLC*,
    2019 WL 3955386 (C.D. Cal. Aug. 2, 2019)..................................................10

*Kanan v. Thinx Inc.*,
    2021 WL 4464200 (C.D. Cal. June 23, 2021) ...............................................12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .........................................................................8

*Ketayi v. Health Enrollment Grp.*,
    2021 WL 2864481 (S.D. Cal. July 8, 2021) ...................................................15

*Klein v. Ljubljana Inter Auto D.O.O.*,
    2021 WL 6424917 (C.D. Cal. Sep. 13, 2021)................................................13

*Lassen v. Nissan N. Am., Inc.*,
    211 F. Supp. 3d 1267 (C.D. Cal. 2016) ..........................................1, 4, 5, 6, 15

*Lusson v. Apple, Inc.*,
    2016 WL 10932723 (N.D. Cal. June 20, 2016) .............................................15

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ...........................................................................5

*McKinney v. Corsair Gaming, Inc.*,
   2022 WL 2820097 (N.D. Cal. July 19, 2022)................................................14

*Punian v. Gillette Co.*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)...............................................13

*Quackenbush v. Am. Honda Motor Co.*,
   2023 WL 187491 (N.D. Cal. Jan. 13, 2023)..................................................13

*Sims v. Kia Motors Am., Inc.*,
   2014 WL 12558249 (C.D. Cal. Mar. 31, 2014).................................................8

*Sommer v. GM, Ltd. Liab. Co.*,
   2021 WL 321995 (S.D. Cal. Feb. 1, 2021)....................................................13

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...............................................................14

*Stewart v. Electrolux Home Prods. Inc.*,
   304 F. Supp. 3d 894 (E.D. Cal. 2018)........................................................9

*Sud v. Costco Wholesale Corp.*,
   229 F. Supp. 3d 1075 (N.D. Cal. 2017)......................................................11

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)......................................................12

*Troup v. Toyota Motor Corp.*,
   545 Fed. App'x 668 (9th Cir. 2013) ........................................................12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..............................................................8

*Winters v. Ridgewood Indus.*,
   2020 WL 3035217 (E.D. Cal. June 5, 2020) ..................................................4

*Zeller v. Optavia, LLC*,
   2022 WL 17858032 (S.D. Cal. Dec. 22, 2022)................................................14

**Statutes**

42 U.S.C. § 6291..................................................................................6

42 U.S.C. § 6297.............................................................................1, 6, 7

Cal. Health & Safety Code § 25249.5.............................................................11

**Rules**

Fed. R. Civ. P. 9...........................................................................1, 8, 9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   <u>INTRODUCTION AND STATEMENT OF ISSUES (CIV. L.R. 7-4(A)(3))</u>

This case is about a fully functional gas stove, which is one of about 47 million gas-fueled cooking appliances in American homes.[2] Plaintiff Charles Drake alleges he bought a GE-brand gas stove in November 2022. He does *not* contend that his stove malfunctioned, failed, or injured anyone. Instead, he alleges that indoor gas stoves may present health risks because burning gas can emit pollutants. And even though his stove performed as designed, Drake seeks to hold GEA[3] liable for purportedly not warning customers that gas stoves may emit combustion gases when used. The case boils down to whether Drake can assert consumer fraud and warranty claims "based on allegations that a properly-functioning product was defective" because some alleged "safer design" theoretically exists. *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1288 (C.D. Cal. 2016). The answer is "no," and the Complaint should be dismissed. (Section III(B).)

#### <u>Drake's claims also are preempted by the Energy Policy and Conservation Act ("EPCA")</u>

EPCA preempts state-law claims that relate to natural gas consumption in kitchen stoves. (Section III(C).) Drake's state-law claims seek to regulate and reduce natural gas use in kitchen stoves in two ways: (i) by requiring GEA to redesign its stoves, and (ii) by requiring GEA to publish warnings that natural gas use in kitchen stoves is unsafe. These claims are expressly preempted. 42 U.S.C. § 6297.

#### <u>The Complaint fails to state a fraud or consumer protection claim for four more reasons</u>

*First*, Drake's claims for common law fraud and violations of state consumer protection statutes do not allege particularized facts, as required by Rule 9(b). (Section III(D)(1).) *Second*, if framed as omission claims, Drake has not plausibly shown how GEA had pre-sale knowledge of the specific "defect." (Section

---

[2] *See* Request for Judicial Notice ("RJN"), Ex. 1, at p. 1 (US Energy Information Administration, *Highlights for appliances in U.S. homes by state, 2020* (Final data release date: March 2023), available at https://www.eia.gov/consumption/residential/data/2020/state/pdf/State%20Appliances.pdf.

[3] "GEA" refers to Defendant Haier US Appliance Solutions Inc. d/b/a GE Appliances.

III(D)(2).) *Third*, Drake pleads disguised claims under California Proposition 65, but he has not complied with that statute's strict notice and certification of merit requirements. (Section III(D)(3).) *Fourth*, Drake asserts a vague "multi-state" consumer protection claim, but his allegations are conclusory, and he lacks standing to invoke state laws outside California. (Section III(D)(4).)

### Drake has alleged no breach of implied warranty

All of Drake's implied warranty claims fail because he alleges no facts showing his stove is unmerchantable or lacked fitness for a particular purpose. (Section III(E).)[4]

### Drake fails to state any claim for equitable relief for three more reasons

*First*, Drake does not state any equitable claim because he alleges an adequate legal remedy in the form of damages. (Section III(F)(1).)[5] *Second*, Drake's unjust enrichment claim duplicates his consumer fraud claims and fails with them. (Section III(F)(2).) *Third*, Drake alleges no basis for injunctive relief, as he does not allege a concrete and imminent threat of future injury to himself. (Section III(F)(3).)

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

Drake's lawsuit begins with the premise that basically every gas-fueled stove, oven, and range in the United States is "defective." (*See* Comp. ¶¶ 1, 4, 32-33, 37, 41.) He alleges that, although "[a]bout 40% of American households use natural gas stoves," they have a "defect" because they purportedly emit "air pollutants . . . linked to respiratory illness, cardiovascular problems, cancer, and other health conditions." (*Id*. ¶¶ 1, 32-33.) Yet the sources Drake cites show he is speculating: "[g]as ranges have been the gold standard in cooking for decades[,]" but "growing evidence *suggests*" they can emit pollutants, "*prolonged exposure*" to which has been linked to potential health issues.[6] The studies do not "prove that cooking with

---

[4] Drake's implied warranty claim under the Uniform Commercial Code also fails because he does not and cannot allege he was in privity with GEA. (Section III(E).)

[5] This includes Drake's claims for unjust enrichment, violation of California's Unfair Competition Law and False Advertising Law, and for equitable relief under California's Consumers Legal Remedies Act.

[6] Comp. ¶ 1 n.2 (citing https://www.consumerreports.org/appliances/indoor-air-quality/is-your-gas-range-a-healthrisk-a6971504915/). Emphases are added and internal citations are omitted unless otherwise stated.

gas causes" health issues,[7] and their accuracy has been disputed, including because they lack "measurements or tests based on real-life appliance usage."[8]

The chair of the Consumer Product Safety Commission recently advised that the Commission is not planning imminent regulatory action on gas stoves. (*See* RJN, Ex. 2 [Statement of CPSC Chair (Jan. 11, 2023)].) Instead, it is seeking public comment to better understand potential effects and solutions for reducing any associated risks. (*See* RJN, Ex. 3, at pp. 1-3 [CPSC Request for Information (Mar. 7, 2023)].) Thus, although recent news articles have speculated about an association between gas stoves and various health concerns, these claims remain disputed and the subject of ongoing research. (*See* RJN, Ex. 3.) Yet according to Drake, GEA should be held liable for not cautioning against use of its own properly-functioning product or redesigning its product to reduce energy use. (Comp. ¶¶ 2, 28-29, 30-33.)

As for his own experience, Drake's allegations are sparse. He alleges that, in November 2022, he bought a GE-brand gas stove from Home Appliances in Eureka, California. (Comp. ¶ 38.) He does not allege that his stove ever failed. (*Id.* ¶¶ 38-41.) He does not allege that his stove functions any differently than the tens of millions of gas stoves in other American homes. (*Id.*) And he does not allege that his stove has caused anyone or anything physical harm by emitting supposed pollutants (or otherwise). (*Id.*) Instead, without identifying any particular statement he relied on, he claims he was deceived into overpaying for "a defective product[.]" (*Id.* ¶ 41.)[9] Drake asserts eight counts,[10] none of which survives this Motion.

---

[7] Comp. ¶ 24 n.21 (citing https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/).

[8] *See, e.g.*, American Gas Association Statement on the International Journal of Environmental Research and Public Health Report (Jan. 10, 2023), available at https://www.aga.org/news/news-releases/aga-statement-on-the-international-journal-of-environmental-research-and-public-health-report/ (discussed in https://www.scientificamerican.com/article/the-health-risks-of-gas-stoves-explained/ at Comp. ¶ 24 n.21.)

[9] Although he does not mention it, Drake's stove was covered by an express warranty. (RJN, Ex. 4.)

[10] The counts include (i) violation of California's Unfair Competition Law ("UCL"); (ii) violation of California's False Advertising Law ("FAL"); (iii) violation of California's Consumers Legal Remedies Act ("CLRA"); (iv) breach of implied warranty under the California Song-Beverly Consumer Warranty Act ("SBA"); (v) violation of "multi-state" consumer protection statutes; (vi) breach of implied warranty under

### III.   ALL DRAKE'S CLAIMS SHOULD BE DISMISSED

**A.  Motion to Dismiss Standard**

To survive a motion to dismiss, a complaint must allege sufficient facts to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Canlas v. United States Dep't of the Treasury*, 2020 WL 6684851, at *1 (N.D. Cal. Nov. 12, 2020).

**B.  Drake Has Not Pled an Actionable "Defect" or Cognizable Injury.**

The fundamental problem with Drake's case is his stove functions exactly as promised. GEA never promised a gas stove that would cook food without emitting combustion gases. And Drake's stove functions no differently than the tens of millions of other gas stoves in American homes. Thus, Drake has alleged no "defect," nor any cognizable injury.

A long line of Ninth Circuit cases has rejected similar attempts to "recast a no-injury products liability action" as a fraud or breach of warranty suit. *See, e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (rejecting claim that iPod should have had safer design to avoid hearing loss); *Lassen*, 211 F. Supp. 3d at 1289 (dismissing claim based on purported failure to disclose risk of carbon monoxide poisoning from vehicle); *Winters v. Ridgewood Indus.*, 2020 WL 3035217, at *2-4 (E.D. Cal. June 5, 2020) (dismissing claim that furniture was defective because of tip over risk); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *5 (N.D. Cal. Apr. 13, 2017) ("[A] plaintiff that fails to allege a defect actionable in the consumer fraud context lacks standing to assert consumer fraud and warranty claims."). In *Birdsong*, for example, plaintiffs alleged that Apple iPods produced sounds so loud that they could cause hearing loss. 590 F.3d at 957. The Ninth Circuit affirmed dismissal of UCL and warranty claims because the iPod's "inherent risk of hearing loss" was not a "cognizable defect," and "plaintiffs' alleged injury in fact [wa]s premised on the loss of a 'safety' benefit that was not part of the bargain to begin with." *Id.* at 961.

---

the Uniform Commercial Code ("U.C.C."); (vii) fraudulent omission; and (viii) unjust enrichment.

Similarly, in *Lassen*, plaintiffs alleged that a keyless fob was defective because it should have had a feature that turned the vehicle off when removed. 211 F. Supp. 3d at 1271. Plaintiffs alleged that this design flaw exposed them to risk of carbon monoxide poisoning when their vehicles kept running, and that they would not have bought the vehicles had they known of the fob "defect." *Id.* at 1279. Rejecting these theories, Judge Birotte dismissed the case because plaintiffs "[did] not allege the keyless fob systems malfunctioned or 'failed to do anything they were designed to do,' and instead they 'merely suggested changes . . . which they believed would make the product safer.'" *Id.* at 1283. Thus, plaintiffs could not establish any cognizable "defect," nor any injury in fact. *Id.*

The same analysis applies here. Drake does not allege any physical injury. He does not allege that his stove malfunctioned. And he does not allege that his stove performs any differently than intended, either based on design or manufacture. Instead, his claims hinge on product liability theories: that GEA failed to warn of the risk that any gas stove could emit pollutants (a failure to warn theory) (Comp. ¶¶ 30-33); and that gas stoves should have safer designs that use less gas (a design defect theory) (*id.* ¶¶ 28-29). Yet Drake cannot "rely on products liability standards" to allege that "a properly-functioning product is defective for purposes of establishing a duty to disclose under consumer fraud law." *Lassen*, 211 F. Supp. 3d at 1286. It is common knowledge that gas stoves emit combustion gases when used and why exhaust hoods, fans, and kitchen windows are typical.[11] As Judge Birotte explained, allowing claims like Drake's would "obliterate the distinction between consumer fraud claims and failure-to-warn products liability claims, because, in effect, a seller could be held liable for mere economic loss for failure to disclose hazards of a product, even

---

[11] *See* The New York Times, *Gas Stoves Are Tied to Health Concerns. Here's How to Lower Your Risk.* (Last Updated Jan. 15, 2023) (noting that potential hazards of exposures to gas stoves have been covered for the last 50 years, experts have said there is no reason to "freak out," and that potential risks can be mitigated simply by opening windows, cracking doors, or using exhaust hoods, among other tips), available at https://www.nytimes.com/2023/01/11/well/live/gas-stoves-health-risks.html; *see also McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 708 (9th Cir. 2020) ("Given that the health risks of consuming Pop Secret were established by 2008, we are not persuaded that the Pop Secret McGee purchased 'was worth objectively less than what one could reasonably expect.'").

where the failure to disclose resulted in neither physical injury nor property damage—either of which is required to sustain a true products liability action." *Id.* at 1288. "This goes far beyond the primary purpose of consumer fraud law, which is to prevent businesses from deceiving consumers, not to protect consumers from dangerous products." *Id.*

With no cognizable defect, Drake also cannot show standing. Drake was entitled "to expect" that his gas stove "would function as designed." *Id.* at 1284. That expectation was met, as Drake does not allege his stove malfunctioned or injured anyone. Instead, he "seek[s] to force [GEA] to implement an 'alternative design[.]'" *Azoulai*, 2017 WL 1354781, at *6. But this "'can only be established by retrospective standards of products liability law'" that do not apply in this action. *Id*. In other words, Drake received the benefit of his bargain, sustained no injury, and cannot now bring consumer fraud or warranty claims based on a properly-functioning gas stove. *See Lassen*, 211 F. Supp. 3d at 1284 ("Plaintiffs were entitled to . . . vehicles [that] would function as designed; the Complaints reveal that that is what Plaintiffs received[.]").

## C. Drake's State-Law Claims Also Are Preempted by EPCA.

Drake's claims seek to regulate and reduce natural gas use in kitchen stoves and are thus preempted by EPCA, which created a comprehensive approach to federal energy policy, including test procedures, labeling, and energy standards for consumer household appliances. *See* 42 U.S.C. §§ 6291 *et seq.*

This case involves express preemption. *See* 42 U.S.C. § 6297. "EPCA's preemption clause establishes that, once a federal energy conservation standard becomes effective for a covered product, 'no State regulation *concerning* the energy efficiency, *energy use*, or water use of such *covered product* shall be effective with respect to such product,' unless the regulation meets one of several categories not relevant here." *Cal. Rest. Ass'n v. City of Berkeley*, 2023 WL 2962921, at *4 (9th Cir. Apr. 17, 2023).[12] "It is without

---

[12] EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use." 42 U.S.C. § 6291(4). "[E]nergy includes "fossil fuels," such as natural gas. § 6291(3). And a "consumer product" is "any article" which "consumes, or is designed to consume," energy and is distributed for personal use, which includes "kitchen ranges and ovens." §§ 6291(1)-(2), 6292(a)(10).

dispute" that "State regulation" as defined by EPCA encompasses state laws, regulations, and common law. *See Jurgensen v. Felix Storch, Inc.*, 2012 WL 2354247, at *2 (S.D.N.Y. June 14, 2012).

The Ninth Circuit just recently confirmed that EPCA preempted Berkeley's attempted ban of natural gas piping in new buildings. *Cal. Rest. Ass'n*, 2023 WL 2962921, at *2. As the Ninth Circuit explained, by using the term "concerning" in Section 6297(c), "Congress meant to expand preemption beyond direct or facial regulations of covered appliances." *Id.* at *6. The "preemptive text" also is "not limited to 'energy conservation standards[;]'" rather, "the statute [] broadly preempts *any state regulation* concerning 'energy use' and 'energy efficiency' of the covered product." *Id.* at *8. This includes state laws "that relate to 'the quantity of [natural gas] directly consumed by' [kitchen stoves] at the place where those products are used." *Id.* at *4. Thus, "[b]y its plain text and structure," EPCA's preemption provision encompasses state-law claims that concern "natural gas *use* by covered products." *Id.* at *2 (emphasis in original). EPCA therefore preempted Berkeley's ordinance because it indirectly sought to reduce (indeed, ban) use of covered natural gas appliances, and state laws "can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." *Id.* at *9 (emphasis in original).

Drake's claims are expressly preempted because, like Berkley's ordinance, they seek to reduce natural gas use. Drake alleges GEA failed to use "alternative gas stove designs" to reduce pollutants, including designs that "consume about 40% less natural gas to reach cooking temperatures[.]" (Comp. ¶¶ 2, 28-29, 65.) He alleges GEA should be made to redesign its gas stoves to use and emit less gas. (*See id.* ¶¶ 28, 42.) And he alleges GEA must label its stoves with warnings that the products' use of natural gas is unsafe, the obvious effect of which is to regulate and reduce natural gas use. (*See id.* ¶¶ 32-33, 42, 70-71, 88-90.)[13] In other words, Drake's claims are *expressly* designed to reduce natural gas use. But he cannot

---

[13] *See, e.g.*, *Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 757 (9th Cir. 2019) (noting that a primary objective of a San Francisco ordinance requiring warning labels about drinking beverages with added sugar was to reduce consumption of sugar-sweetened beverages); City & Cty. of S.F., Cal., Bd. of Supervisors Ordinance No. 100-15, § 1 (June 16, 2015).

use state-law claims to modulate or reduce natural gas use in kitchen stoves.[14] Like Berkeley's invalidated ordinance, Drake's claims have "waded into a domain preempted by Congress" and should be dismissed. *Cal. Rest. Ass'n*, 2023 WL 2962921, at *2.

**D.  Drake's Fraud and Consumer Protection Claims Fail for at Least Four More Reasons.**

Drake's fraud and consumer protection claims (counts one, two, three, five, and seven) should be dismissed for at least *four* more reasons, as set forth below. (Sections III(D)(1)-(4).)

**1.  Drake's fraud-based claims should be dismissed because they are vague and conclusory.**

Rule 9(b) applies to claims "grounded" or "sound[ing] in fraud[.]" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Drake alleges that GEA intentionally misled consumers by selling gas stoves with a known, concealed "defect." (*See, e.g.*, Comp. ¶¶ 33, 39, 63, 72, 76, 86, 112.) These allegations sound in fraud and must satisfy Rule 9(b). *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (applying Rule 9(b) to UCL, CLRA, and FAL claims based on alleged concealment of a product defect). Thus, Drake must allege with particularity the time, place, and content of GEA's alleged misrepresentations or omissions, along with facts demonstrating his reliance. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). He has not done so.

Drake vaguely alleges that GEA represented its gas stoves are "safe and fit for cooking inside the home." (Comp. ¶¶ 76, 86.) But nowhere does Drake identify the particular marketing statement, where it was made, when, or how. Thus, neither GEA nor the Court can determine whether any challenged statement is even theoretically actionable. *See, e.g.*, *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, at *7 (C.D. Cal. Mar. 31, 2014) (finding general statements to give consumers "peace of mind" and "ensure everyone's well-being" are puffery); *Azoulai*, 2017 WL 1354781, at *8 ("[T]here is nothing 'specific and measurable' about the word 'safely.'").

---

[14] Nor can Drake assert state-law claims seeking "disclosure of information" about energy use by a covered product "*other than* [the] information required" by EPCA. *See Jurgensen*, 2012 WL 2354247, at *5 (emphasis in original).

Drake also does not allege facts showing what *he* reviewed or relied on. Instead, he generically concludes that he "relied" on unspecified "marketing," an "instruction manual," an "installation guide," and "stickers," which were "material" to him. (Comp. ¶¶ 39-41, 69, 76, 89, 112, 135.) But he provides no examples and does not allege with particularity *what* he saw, the *content* of the statements, *who* made them, *when* they were made, *why* they were deceptive, or *how* (if at all) they influenced his purchasing decision. (*Id.*) Without these facts, Drake's claims sounding in fraud all fail—whether based on purported misrepresentations or omissions.[15]

### 2. Drake has not alleged how GEA knew of any specific (unproven) health effects that he claims result from normal cooking with a gas stove.

For the omission-based claims, Drake also must allege facts showing, at minimum, that GEA knew about an actionable "defect" in his gas stove *before* sale. *See Azoulai*, 2017 WL 1354781, at *8 ("To state a claim for failing to disclose a defect[,]" plaintiff must plausibly allege "that the manufacturer knew of the defect at the time a sale was made."). This pre-sale knowledge must go to the "specific" issue alleged. *See Stewart v. Electrolux Home Prods. Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. 2018) ("[A] plaintiff is typically required to allege *how* the defendant obtained knowledge of the *specific* defect prior [to] the plaintiff's purchase of the defective product.").

Drake claims that GEA knew normal cooking with the gas stove he bought would contribute to respiratory illness, cardiovascular problems, cancer, lung diseases, and asthma. (*See* Comp. ¶¶ 1-2, 22.) But he offers no plausible facts to support this conclusion.

*First*, Drake baldly alleges that GEA "monitors and keeps track of research on the health effects of its products." (Comp. ¶ 27). But this rote conclusion is entitled to no weight, as it does not specify what

---

[15] *See, e.g.*, *Davidson v. Apple, Inc.*, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) (finding misrepresentation claim deficient "[i]n the absence of any allegations that Plaintiffs encountered a representation made by Defendant—let alone what those representations were, when they were made, and why they were false"); *In re Arris*, 2018 WL 288085, at *8 (omission claims must specify the particular representations at issue under Rule 9(b)); *Bird v. First Alert, Inc*., 2014 WL 7248734, at *6 (N.D. Cal. Dec. 19, 2014) (dismissing conclusory omission claims for similar reasons).

GEA supposedly tracks or how, or what GEA specifically learned or when. *See In re NJOY Consumer Class Action Litig.*, 2015 WL 12732461, at *15 (C.D. Cal. May 27, 2014) (rejecting allegations that manufacturer was "in a superior position to know"); *Kahn v. FCA US LLC*, 2019 WL 3955386, at *4 (C.D. Cal. Aug. 2, 2019) (finding allegations conclusory because plaintiff did not identify "any particular testing, reports, or otherwise that gave Defendant knowledge about the rear wire harness issues").

*Second*, Drake cites a collection of recent, third-party articles discussing the growing debate about the potential risks of gas stoves. (*See, e.g.*, Comp. ¶¶ 16-21 ns. 6-18.) But none of the articles refer to GEA or any testing of GEA stoves. (*See id.*) Many were published *after* Drake bought his stove. *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457, at *3 (N.D. Cal. Mar. 30, 2018) ("Plaintiffs rely on a scattered series of online reports, but many of those reports *post-date* individual Plaintiff's purchases[.]"). And the health claims in these articles are the subject of ongoing research and debate (RJN Ex. 3), as opposed to showing GEA's concrete knowledge of anything. (Section II, *supra*.)[16]

*Third*, Drake cites (but does not attach) a 1986 report by the Clean Air Scientific Advisory Committee and a 1992 "meta-analysis" from scientists at Duke University and the EPA. (*See* Comp. ¶¶ 25-26 ns. 22-23.) But these reports are equivocal or disputed. (*See id.*). And even if these reports supported the specific, health-based claims Drake asserts, he still does not plausibly explain how GEA learned of the reports, or how GEA considered them for stoves manufactured in 2022. *See Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *12 (N.D. Cal. Apr. 4, 2019) (dismissing omission claims because "vague, sweeping statements" from industry research do not show a defendant's pre-sale knowledge of a defect). In addition, all the third-party sources Drake cites supposedly showing the risks of gas stoves are *publicly available*, meaning they do not show how GEA had any information that was not equally available

---

[16] Courts also frequently decline to find pre-sale knowledge of a defect based on third-party internet content. *See, e.g.*, *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2017 WL 86033, at *9 (N.D. Cal. Jan. 10, 2017) (rejecting reliance on complaints on third-party website).

to him. (Comp. ¶ 33 (alleging GEA's "exclusive knowledge").) *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *16 (plaintiffs could not rely on a 2009 FDA study regarding toxins in e-cigarettes because "the study was publicly available for three years or more"); *Gutierrez v. Johnson & Johnson Consumer, Inc.*, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) ("Plaintiffs had access to numerous publicly available scientific publications and other widely disseminated articles from The New York Times and The Washington Post regarding the presence of contaminants in talc products.").[17]

In sum, Drake has not offered facts plausibly showing that GEA knew normal stove use resulted in the specific (unproven) health effects he claims. His omission-based claims fail for this reason as well.

### 3. Drake is trying to evade Proposition 65 (Cal. Health & Safety Code §§ 25249.5 *et seq.*).

Drake cannot evade Proposition 65 by asserting nondisclosure claims under the UCL or CLRA. *See, e.g.*, *Harris v. R.J. Reynolds Vapor Co.*, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016) ("A plaintiff cannot sidestep [Proposition 65's] requirements by trying to use the UCL or CLRA to plead around a claim that would be barred under Proposition 65."). For example, in *Gutierrez v. Johnson & Johnson*, plaintiffs challenged "defendants' alleged failure to disclose the presence of asbestos and other carcinogens in their Talcum" products. 2020 WL 6106813, at *5. Although plaintiffs disclaimed reliance on Proposition 65, their claims included "implicit" Proposition 65 allegations and failed to establish an independent duty of disclosure. *Id.* at *3-5. Thus, the court held that the consumer fraud claims based "on a duty to disclose certain carcinogenic substances" were an improper "attempt to plead around Proposition 65," as well as its notice and certificate of merit requirements. *Id.*[18]

The same is true here. Drake alleges that GEA's gas stoves emit pollutants "linked to" cancer and that this should have been disclosed. (Comp. ¶¶ 1, 17, 19.) Yet Drake alleges no independent duty of

---

[17] *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1087 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018) (dismissing omission claim where complaint admitted information was publicly available).

[18] *Accord Hanna v. Walmart Inc.*, 2020 WL 7345680, at *3-4 (C.D. Cal. Nov. 4, 2020) (dismissing UCL claim alleging failure to warn about health risks of glyphosate because it was a disguised Prop. 65 claim).

disclosure, and his allegation that GEA had such a duty is an "implicit" Proposition 65 claim, just like the allegations about a duty to disclose the potential effects of asbestos were implicit Proposition 65 allegations in *Gutierrez*. Drake does not allege that he complied with Proposition 65's pre-suit requirements, and thus his fraud-based claims should be dismissed. *See Gutierrez*, 2020 WL 6106813, at \*3-5.

    **4.  Drake's boilerplate "multi-state" consumer protection claim adds nothing, and he lacks standing to invoke the laws of any state besides California.**

In Count V, Drake asserts a "multi-state" consumer protection claim, including under the laws of Connecticut, Illinois, Maryland, Missouri, and New York. (Comp. ¶ 109.) The claim is boilerplate, fails to specify or differentiate any statutory elements, and provides no independent basis for survival once Drake's California law claims are dismissed. Drake also is a California resident, and he alleges "injury" in California only. (*Id.* ¶¶ 6, 38-41.) Thus, he lacks standing to invoke the laws of any state besides California in the first place.[19]

**E.  The Implied Warranty Claims Do Not Allege Facts Showing Any Breach.**

Drake's implied warranty claims also fail because he alleges no *facts* showing that his stove was unmerchantable or lacked fitness for any particular purpose. (Comp. ¶ 120.) To show unmerchantability, Drake must allege a defect so severe that it "drastically undermine[s] the ordinary operation of the [product]." *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (similar). "The implied warranty of merchantability is breached if 'the product [does] not possess even the most basic degree of fitness for ordinary use.'" *Kanan v. Thinx Inc.*, 2021 WL 4464200, at \*7 (C.D. Cal. June 23, 2021) (dismissing merchantability claim alleging that Thinx underwear contained unsafe PFAS levels). Drake has not alleged that his stove fails to perform as intended, or at all, or even that he has stopped using his stove. He also

---

[19] *See, e.g.*, *Forsher v. Frank Brunckhorst Co., LLC*, 2019 WL 13201945, at \*7 (N.D. Cal. Nov. 7, 2019) ("Plaintiff asserts multiple Florida state law claims. . . . However, Plaintiff only alleges to have purchased Defendant's cheeses in this District."); *Effinger v. Ancient Organics LLC*, 2023 WL 2214168, at \*6 (N.D. Cal. Feb. 24, 2023) (dismissing "multi-state" claim for lack of standing).

does not allege that his stove performs differently than the tens of millions of gas stoves that Americans use every day. Thus, he has not alleged unmerchantability. *See Birdsong*, 590 F.3d at 958 ("[T]he plaintiffs make no allegations of any history of malfunction[.]").

Drake's implied warranty of fitness claim is even weaker. "For a valid implied warranty of fitness claim," Drake "must establish[,]" among other things, that GEA knew or had reason to know (i) the particular purpose for which he intended to use his stove, and that (ii) he was relying on GEA's special skill or judgment. *See Sommer v. GM, Ltd. Liab. Co.*, 2021 WL 321995, at *2 (S.D. Cal. Feb. 1, 2021) ("[A] 'particular purpose' means 'a specific use by the buyer which is peculiar to the nature of his business.'"). Yet Drake alleges no special use or purpose for his stove besides basic cooking. *See Punian v. Gillette Co.*, 2016 WL 1029607, at *18 (N.D. Cal. Mar. 15, 2016) ("To state a claim, Plaintiff's particular purpose must differ from the ordinary purpose for Duralock Batteries."). And he does not allege that GEA knew of any particular purpose for which *he* was buying *his* stove either. *See Goldsmith v. Allergan, Inc.*, 2010 WL 11463630, at *4 (C.D. Cal. Feb. 24, 2010) ("Plaintiff does not allege that Defendant selected a particular type of Botox to meet Plaintiff's needs or that Defendant even knew that Plaintiff was relying on Defendant's judgment."). Thus, Drake has alleged no implied warranty claim.[20]

## F.  All of Drake's Claims for Equitable Relief Are Subject to Dismissal.

Finally, Drake's equitable claims and requests for relief are subject to dismissal for at least three more reasons, as set forth below. (Sections III(F)(1)-(3).)

### 1.  Drake seeks actual damages and pleads an adequate legal remedy.

Drake's UCL, FAL, CLRA, and unjust enrichment claims are purely equitable. *See Fonseca v.*

---

[20] In addition, a plaintiff asserting a claim under the U.C.C. in California must stand in direct "vertical privity with the defendant as 'adjoining links of the distribution chain.'" *Klein v. Ljubljana Inter Auto D.O.O.*, 2021 WL 6424917, at *5 (C.D. Cal. Sep. 13, 2021); *Quackenbush v. Am. Honda Motor Co.*, 2023 WL 187491, at *2-3 (N.D. Cal. Jan. 13, 2023) (similar). Drake alleges purchase from a third-party retailer—Home Appliances in Eureka, California. (Comp. ¶ 38.) Thus, he is not in vertical privity with GEA, and Count VI of the Complaint fails for this reason as well.

*Goya Foods, Inc.*, 2016 WL 4698942, at *7-8 (N.D. Cal. Sept. 8, 2016).[21] As the Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, when, as here, a plaintiff fails to show that legal remedies are inadequate, equitable claims should be dismissed. 971 F.3d 834, 844 (9th Cir. 2020); *see also Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (rejecting attempts to distinguish *Sonner* on procedural grounds). The reasoning in *Sonner* applies with particular force when the plaintiff seeks money damages. *See Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022) ("[T]he availability of an adequate legal remedy [wa]s clear from the face of the [complaint.]"). Drake seeks damages based on alleged overpayment, for the same purported conduct underlying his equitable claims. (Comp. ¶¶ 106-07, 113-14, 131, 138-39.) Thus, his own allegations show legal remedies are adequate.

Attempting to circumvent this common-sense conclusion, Drake alleges that he seeks restitution "in the alternative" (*id.* ¶ 43). But he fails to show why damages are not adequate in the first place. *See McKinney v. Corsair Gaming, Inc.*, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022) ("Plaintiffs have not pleaded that damages are inadequate[.]"); *Amans v. Tesla, Inc.*, 2022 WL 2952474, at *1 (N.D. Cal. July 26, 2022) ("This Court has previously required that plaintiffs offer some explanation as to why their legal remedies are inadequate."). Drake also makes vague allegations about purported "uncertainties" or "inefficiencies" in his legal claims. (Comp. ¶¶ 44-46.) But courts have rejected these arguments as well. *See, e.g.*, *Zeller v. Optavia, LLC*, 2022 WL 17858032, at *7 (S.D. Cal. Dec. 22, 2022) ("Plaintiffs' arguments that equitable claims provide greater remedy and are easier to prove does not make their equitable claims proper."). Thus, Drake provides no basis to avoid dismissal of his equitable claims.

### 2. Drake's unjust enrichment claim fails to allege GEA did anything unjust.

Drake's unjust enrichment claim also should be dismissed because he fails to show that GEA unjustly retained any benefits. In California, unjust enrichment claims sound in quasi-contract, and when

---

[21] The CLRA claim seeks only injunctive relief, not damages. (Comp. ¶¶ 93-94.)

an unjust enrichment claim mirrors other statutory or tort claims, it rises or falls with the "underlying, substantive claims[.]" *See Lusson v. Apple, Inc.*, 2016 WL 10932723, at *3 (N.D. Cal. June 20, 2016). Not only was Drake's stove covered by an express warranty (RJN, Ex. 4, at p. 26)—which defeats a quasi-contract theory—his underlying claims fail to show that GEA did anything unlawful. (Sections III(B)-III(E), *supra*.) Thus, his unjust enrichment claim "fall[s] with" his deficient underlying claims. *Lusson*, 2016 WL 10932723, at *3.

### 3. Drake lacks standing to pursue injunctive relief.

To seek prospective injunctive relief, "a plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way,' such that the plaintiff's injuries could be redressed by the injunction." *Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481, at *8 (S.D. Cal. July 8, 2021). As shown, Drake has alleged no past injury (Section III(B), *supra*), let alone a likelihood of certainly impending future injury. *See Lassen*, 211 F. Supp. 3d at 1280 ("In addition, Plaintiffs' concerns about future harm amount to only a speculative risk of injury[.]"). Thus, he cannot seek injunctive relief either.

## IV.  <u>CONCLUSION</u>

Drake should not be allowed to assert consumer fraud or warranty claims based on a stove that works as designed and has no problems. Drake's "no injury" theories ignore Ninth Circuit precedent rejecting similar allegations. And his claims are expressly preempted by EPCA. Drake also alleges no facts to support any of his claims. The Complaint should be dismissed in its entirety.

Dated: May 3, 2023                              GREENBERG TRAURIG, LLP

                                       By: */s/ Robert J. Herrington*
                                                Robert J. Herrington
                                                Attorneys for Defendant HAIER US APPLIANCE
                                                SOLUTIONS INC. d/b/a GE APPLIANCES