UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DRAKE,<br><br>        Plaintiff,<br><br>      v.<br><br>HAIER US APPLIANCE SOLUTIONS INC.,<br><br>        Defendant. | Case No. 23-cv-00939-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Defendant Haier US Appliance Solutions Inc.'s motion to dismiss was heard before this Court on August 10, 2023. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the motion in part and **DENIES** the motion in part for the following reasons.

## BACKGROUND

The Complaint makes the following allegations, which the Court accepts as true for purposes of the motion to dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Plaintiff Charles Drake lives in McKinleyville, California. Compl. ¶ 6. In November 2022, Drake purchased a GE gas stove manufactured by Defendant and sold through a third-party retailer. Compl. ¶ 38. Defendant Haier US Appliance Solutions, Inc. ("Haier") makes, distributes, sells, and markets gas stoves, ovens, and range products, including under the GE brand. Compl. ¶ 8. Haier is a Delaware corporation with a principal place of business in Louisville, Kentucky. Compl. ¶ 9.

Drake contends that Haier misleads consumers into believing that gas stoves are generally safe when, in reality, every gas-fueled stove, oven, and range in the United States is "defective."

*See* Compl. ¶¶ 1, 4, 32-33, 37, 41.  Although "[a]bout 40% of American households use natural gas stoves," they have a "defect" because they purportedly emit "air pollutants . . . linked to respiratory illness, cardiovascular problems, cancer, and other health conditions."  Compl. ¶¶ 1, 32-33.  Haier knew that gas stoves and related products emit health-harming pollutants.  Compl. ¶¶ 22-27.  Moreover, Haier was aware of safe, reasonable alternative designs that would avoid or reduce the harmful pollutants emitted by gas stoves.  Compl. ¶¶ 28-29.

Haier should have warned consumers of the pollutant risks, Drake contends.  Compl. ¶¶ 30-33.  If Haier had included such a warning, demand for gas stoves and related products would decrease, leading to a decrease in price – this failure to disclose the risks artificially inflates the price of gas stoves, leading Drake and other consumers to overpay for the products and suffer damages.  Compl. ¶¶ 34-37.

Drake does not allege that he or his family have been physically harmed by the gas stove he purchased.  Drake does not state anything specific about his gas stove or its emissions.  Rather, Drake's and the putative class's damages are premised on the economic loss of overpaying for gas stoves that would have been cheaper if the public had not been gaslit and knew of the stoves' inherent danger.

Drake filed the operative complaint on March 2, 2023.  ECF 1.  He seeks to represent the following classes:

- Nationwide Class: all persons who purchased Defendant's Products while living in the United States during the applicable statute of limitations.
- California Subclass: all persons who, while living in the state of California, purchased Defendant's Products during the applicable statute of limitations; and
- Consumer Protection Subclass: all persons who, while living in certain identified states (the "Consumer Protection Subclass States"), purchased Defendant's Products States during the applicable statute of limitations.

Compl. ¶ 47.

Drake alleges the following causes of action on behalf of himself and the California sub-class:

2

1. Violation of California's Unfair Competition Law ("UCL") (including each prong, unlawful, fraudulent, and unfair)
2. Violation of California's False Advertising Law ("FAL")
3. Violation of California's Consumer Legal Remedies Act ("CLRA")
4. Breach of implied warranty pursuant to California's Song-Beverly Consumer Warranty Act

Drake alleges the following causes of action on behalf of himself and the nationwide class:

5. Violations of State Consumer Protection Statutes in California, Connecticut, Illinois, Maryland, Missouri, and New York
6. Breach of implied warranties under the Uniform Commercial Code
   a. Implied warranty of merchantability (UCC § 2-314)
   b. Implied warranty of fitness (UCC § 2-315)
7. Fraudulent Omission
8. Unjust Enrichment / Quasi-contract

Haier filed the instant motion to dismiss on May 3, 2023. ECF 20. Haier filed a request for judicial notice in support of the motion (ECF 20-1), which the Court considers before reaching the merits of the motion.

## REQUEST FOR JUDICIAL NOTICE

Haier requests that the Court take judicial notice of the following documents in support of the motion (ECF 20-1):

a. US Energy Information Administration, Highlights for appliances in U.S. homes by state, 2020 (Final data release: March 2023).
b. US Consumer Product Safety Commission, Statement of Chair Alexander Hoehn-Saric Regarding Gas Stoves (Jan. 11, 2023).
c. US Consumer Product Safety Commission, Request for Information on Chronic Hazards Associated With Gas Ranges and Proposed Solutions (Mar. 7, 2023).
d. GE Appliances, Single Oven Gas Ranges Owner's Manual.

Drake does not oppose the request for judicial notice. ECF 28.

3

Federal Rule of Evidence 201 permits a court to notice a fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under the incorporation by reference doctrine, the court has discretion to consider on a motion to dismiss "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Haier does not argue that the government reports are incorporated into the complaint by reference, nor does Haier provide any reasoning why the Court should consider these materials in conjunction with the motion to dismiss. Haier merely suggests that the Court can take notice of these materials because they are government reports. Haier seems to offer these items in aid of its factual assertion that its gas stoves are perfectly safe and that evidence to the contrary is flawed. This improperly disputes the pleaded facts and draws all inferences in Defendant's own favor. *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 946 (N.D. Cal. 2022) (rejecting the defendant's argument because it "is subject to a reasonable dispute, and the Court may not resolve factual disputes at the pleading stage"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (reaffirming "the prohibition against resolving factual disputes at the pleading stage"). Further, the Court finds that there is no reason to rely on the documents in deciding the motion to dismiss. Therefore, the Court DENIES the request for judicial notice as moot.

## DISCUSSION

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a

1  "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.
2  P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a
3  cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.
4  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

5  While the court is to accept as true all the factual allegations in the complaint, legally
6  conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft*
7  *v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim
8  for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59
9  (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff
10 pleads factual content that allows the court to draw the reasonable inference that the defendant is
11 liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-
12 pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the
13 complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679.

14 Review is generally limited to the contents of the complaint, although the court can also
15 consider a document on which the complaint relies if the document is central to the claims
16 asserted, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d
17 903, 910 (9th Cir. 2007). The court may also consider documents referenced extensively in the
18 complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster*
19 *Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

20 If dismissal is warranted, it is generally without prejudice, unless it is clear that the
21 complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir.
22 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous
23 amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

24 **B.     Analysis**

25 Haier challenges Drake's Complaint on several grounds. The Court first addresses
26 threshold issues, including Drake's standing and potential preemption of his claims. The Court
27 then addresses Haier's challenge to the sufficiency of Drake's pleading of both the claims
28 sounding in fraud and the claims for breach of implied warranties. Finally, the Court addresses

5

1    whether Drake was obligated to comply with California pre-suit notice requirements and whether

2    his failure to do so bars his California consumer claims.

3        **1.**    **Threshold Issues**

4    The Court considers three threshold issues at the outset: whether Drake pleads an

5    actionable defect, whether Drake has standing to pursue claims under the statutes of other states,

6    and whether Drake's claims are preempted by federal law.

7        **a.**    **Actionable Defect**

8    Although all of Drake's claims depend on Haier's selling him a defective product, this is

9    not a products liability action. Drake cannot pursue products liability claims because he did not

10   experience physical injury to person or property. *See San Francisco Unified School Dist. v. W.R.*

11   *Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995) ("Until physical injury occurs – until damage

12   rises above the level of mere economic loss – a plaintiff cannot state a cause of action for strict

13   liability or negligence."). Because products liability law does not authorize no-injury actions,

14   Drake instead attempts to ground his claims in consumer fraud: that Haier wrongfully induced

15   Drake and others to purchase their gas stoves and related products by concealing the inherent

16   danger of maintaining such products in their homes. Drake pursues economic damages on the

17   basis that he and others would have paid less for the gas stoves or would not have purchased them

18   at all had they known of the danger.

19   The Ninth Circuit has held that overpayment itself is "injury in fact" under Article III.

20   *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (overruled on other grounds by

21   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir.

22   2022), cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424

23   (2022)) (finding that Article III standing exists in a fraudulent omission case when "plaintiffs

24   contend that class members paid more for [a product] than they otherwise would have paid, or

25   bought it when they otherwise would not have done so.") However, the Ninth Circuit has also

26   rejected attempts to "recast a no-injury products liability action" as a fraud or breach of warranty

27   suit. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009).

28   In *Birdsong*, for example, the plaintiffs alleged that the lack of features such as noise

cancellation or a volume meter that would warn users that they were at risk of hearing loss diminished the products' value. *Id.* at 958. The Ninth Circuit found that "the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner." *Id.* at 961. Thus, although the plaintiffs' alleged economic harm centered "on their claim that the iPod has a defect (an inherent risk of hearing loss)," they "failed to allege any cognizable defect," and they ultimately failed to plead any injury in fact. *Id.* at 961-62.

In *Lassen*, the plaintiffs claimed that their vehicles' keyless fob systems were defective because they could be used in a dangerous way, and the vehicles lacked a safety feature – Auto-Off – that could mitigate that danger. *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1282 (C.D. Cal. 2016). The district court, relying in part on *Birdsong*, rejected the plaintiffs' claims that the vehicles diminished in value due to the alleged defect. *Id.* at 1281-84. While the court recognized that diminution in value could theoretically constitute a cognizable injury, it suggested that such diminution could only establish standing where widespread reports of the defect could decrease market demand for the vehicle. *Id.* at 1280 (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010) (finding standing where plaintiffs pleaded widespread knowledge about defect, market value declined, and plaintiffs sold vehicles at a loss)).

Courts distinguish, however, cases in which plaintiffs allege economic harm based on a product's lack of an unbargained-for safety feature from cases in which plaintiffs allege that a product was defective because it did not function as advertised. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334 (N.D. Cal. 2018). In *Arris Cable*, for example, Judge Koh contrasted the lack of injury in *Birdsong* and *Lassen* from claims that the Arris defendants' cable modems were defective because they "did not offer as fast and as reliable an Internet connection as advertised," claims that constituted injury-in-fact. *Id.* at 353. The court there noted, "at the center of the reasoning in *Birdsong* [and] *Lassen* is a discomfort with no-injury products liability actions being tried as consumer fraud cases." *Id.* at 352.

The case at bar initially appears to recast a no-injury products liability action as a

consumer fraud claim, much like the circumstances in *Birdsong* and *Lassen* because Drake's claims hinge on product liability theories. Compl. ¶¶ 1, 16-21, 23-27 (alleging gas stove emits air pollutants at unsafe levels whenever use as intended to cook in the home). Drake charges that Haier failed to warn of the risk that any gas stove could emit pollutants (a failure to warn theory) (Compl. ¶¶ 30-33); and that gas stoves should have safer designs that use less gas (a design defect theory) (¶¶ 28-29). But Drake's allegations contrast with those in *Birdsong* because he alleges that the danger posed by gas stoves is inherent to the product, not only when used in an unsafe manner. Drake's allegations that the products are inherently defective even when used as intended, in conjunction with his contention that that he would not have paid as much had he known of the defect, more closely resemble the allegations in *Arris Cable*. Such claims are sufficient to establish injury-in-fact to support standing. Drake need not allege more specific losses, he need only establish a redressable injury, and the market effect of the allegedly defective gas stoves is sufficient to establish an actual or imminent harm under *Mazza*. Therefore, Drake sufficiently alleges an actionable defect at this stage of the case, and his claims need not be dismissed on this basis.

### b. Claims Under the Statutes of Other States

"Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) (citations omitted). "Claims for relief under the laws of the several states are separate claims for relief and . . . require separate proof of standing." *Stemmelin v. Matterport, Inc.*, No. 20-CV-04168-WHA, 2020 WL 6544456, at *3 (N.D. Cal. Nov. 7, 2020). "When measuring standing claim by claim, a named plaintiff must possess the requisite standing; it is not sufficient that a putative class member may have standing to press one of the claims." *Razuki v. Nationstar Mortg., LLC*, No. 18-CV-03343-JD, 2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020) (citation omitted). "Consequently, at least one named plaintiff must have Article III standing to bring a claim under the laws of each state included in the alleged multi-state class." *Id.*

Here, Drake alleges that he is a California resident that purchased a Haier gas stove in

1    California. Compl. ¶ 38. He advances a cause of action under the consumer protection laws of
2    other states (Connecticut, Illinois, Maryland, Missouri, and New York), but he does not allege that
3    he suffered injury in another state. There is no allegation that Drake has any connection to
4    Connecticut, Illinois, Maryland, Missouri, or New York. Drake thus lacks standing to bring
5    claims under the laws of states other than California. Accordingly, the claims under the consumer
6    laws of Connecticut, Illinois, Maryland, Missouri, and New York must be dismissed.

### c.   Preemption

Federal law preempts state law when: (1) Congress enacts a statute that explicitly preempts state law; (2) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field; or (3) state law actually conflicts with federal law. *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). "Express preemption exists when a statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). When a federal statue contains an express preemption clause, "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 654 (9th Cir. 2021) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993)). "Preemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021).

Haier contends that the Energy Policy and Conservation Act ("EPCA") preempts all of Drake's claims. The company avers that Drake's claims amount to regulations "concerning" the quantity of natural gas directly consumed by kitchen ranges at their point of use. ECF 20 at 13-15. The EPCA promotes energy conservation and efficiency, including energy efficient products. *See* 42 U.S.C. § 6201 (statement of purpose); §§ 6291-6309 (regulating efficiency standards, testing, and labeling of products). To prevent conflicting state regulations, the EPCA preempts any state regulation "concerning the energy efficiency [or] energy use" of covered products, including stoves ("[k]itchen ranges") that use natural gas. 42 U.S.C. § 6297(c); § 6291(3); § 6292(10). "Energy use" means "the quantity of energy directly consumed by a consumer product at point of

9

use." 42 U.S.C. § 6291(4).  The Ninth Circuit distills the EPCA to preempt "regulations that relate to 'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are used."  *Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1050-51 (9th Cir. 2023) (also noting that EPCA's preemptive scope is "extensive").

Here, the consumer fraud and warranty laws underlying Drake's claims do not concern energy efficiency or energy use.  *Cf. Cal. Rest. Ass'n,* 65 F.4th at 1050-51 (finding City of Berkeley's ban of natural gas piping in new buildings preempted by the EPCA).  The claims here do not regulate the amount of gas accessible to appliances, nor do they necessarily impact the quantity of gas consumed by gas appliances at the point of use.  Instead, the claims concern an alleged fraud by omission in the form of Haier's failure to inform the public of the emissions risks of gas appliances, leading to overpayment for the products.  Thus, Haier reliance on *California Restaurant Association* is misplaced, and it fails to establish that Drake's claims are preempted on that basis.

Moreover, the Court cannot determine whether the relief sought by Drake would impact the quantity of energy directly consumed by gas stoves.  There are not enough facts available at the pleading stage to demonstrate that the relief requested would have any impact on the quantity of natural gas consumed at the point of use.  Drake's theory of the case suggests that either improved gas stove efficiency or fewer gas stove purchases driven by additional warnings would impact the quantity of natural gas used overall, but such results are speculative at this juncture, as they are attenuated from the remedies sought.  As Drake notes, requiring a warning would not have any effect on the quantity of gas used in stoves at their point of use in consumers' kitchens.  In sum, Haier fails to carry its burden to demonstrate that Drake's claims are preempted by the EPCA.

Having addressed threshold issues of standing, including whether Drake alleges an actionable defect and whether his claims are preempted by the EPCA, the Court next turns to whether Drake states a claim on which relief can be granted.

**2.     Sufficiency of Pleading**

The Court next assesses Haier's challenge to the sufficiency of Drake's claims sounding in

10

1 fraud and then his claims for breach of implied warranties.

### a. Pleading of Fraud-Based Claims

Drake advances several causes of action sounding in fraud, including three claims under California consumer protection statutes (UCL, FAL, and CLRA), and a claim of fraudulent omission. Haier challenges the sufficiency of these allegations on several fronts, including (a) the sufficiency of Drake's pleading of consumer fraud by omission and (b) the sufficiency of pleading Haier's knowledge of the alleged defect prior to his purchase of the product. The Court takes these up in turn.

### i. Consumer Fraud by Omission

Haier primarily challenges Drake's claims that sound in fraud by arguing that Drake has insufficiently identified the who, what, when, where, and how of the misconduct charged. While this is the standard plaintiffs normally need to meet, *see Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted), a claim of fraud by omission instead "requires a showing of (1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021) (citation omitted).

Drake does not allege the necessary elements of fraud by omission under California law. Most glaringly, Drake fails to plead the second and fourth elements of fraud by omission: that Haier held a duty to disclose the fact of the emissions to him, or that Drake justifiably relied on Haier's concealment of the dangerous emissions from his gas stove. Given these defects, Drake does not adequately plead his claims sounding in fraud, including those under the UCL, the CRLA, and fraudulent omission, and they must be dismissed.

Drake also advances a False Advertising Law ("FAL") claim based on the Haier's alleged omissions. However, a FAL claim is not cognizable when based solely on an omission of material information. *See, e.g.*, *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2015 WL 4967247, at * 8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all."). Because Drake has not identified any affirmative misrepresentation by Haier

11

1    Drake's FAL claim must also be dismissed.

2              **ii.**        **Haier's Knowledge of Alleged Defect Prior to Drake's Purchase**

3          In the Ninth Circuit, a plaintiff is typically required to allege how the defendant obtained

4    knowledge of the specific defect prior the plaintiff's purchase of the defective product in order to

5    sufficiently allege the manufacturer's awareness of a defect. *Wilson v. Hewlett-Packard Co.*, 668

6    F.3d 1136, 1145-48 (9th Cir. 2012). In *Wilson*, the plaintiff alleged that Hewlett-Packard ("HP"),

7    the defendant, knew of the alleged product defect because it had access to aggregate information

8    and data, another lawsuit against HP was premised on the same purported defect, and HP received

9    several complaints from other customers about the defect. *Id.* at 1139. Even with the several

10   potential sources of information regarding the alleged defect, the court determined that they were

11   too conclusory. *Id.* at 1146-47; *see also Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-

12   00447-LHK, 2018 WL 5729234, at *6 (N.D. Cal. Oct. 29, 2018) ("Under California law, a

13   manufacturer must have known of the defect at the time of sale for a plaintiff to state a claim for

14   fraud by omission against the manufacturer."). Claims are deficient where they merely allege that

15   the defendant manufacturer had access to information about the defect or was in a "superior

16   position to know the truth about" the product. *Wilson*, 668 F.3d at 1147.

17         Here, Drake asserts in conclusory manner that Haier knew of the alleged defect underlying

18   this lawsuit. Compl. ¶ 22. Drake points to general publications about industry research, most of

19   which were made public after his purchase of a Haier gas stove. Compl. ¶¶ 16-21. Drake

20   contends that Haier knew of the alleged defect because it is a large company that routinely does

21   diligence on its products and tracks research. Compl. ¶ 27. However, such conclusory assertions

22   are insufficient to establish that Haier knew of the purported ill health effects of its gas stoves

23   prior to Drake's purchase. Drake alleges no connection between Haier and the studies he cites,

24   appearing to conclude merely that Haier "should have known." This does not meet the specificity

25   required for claims sounding in fraud. Therefore, the claims sounding in fraud must also be

26   dismissed on this basis.

27             **b.**        **Pleading of Breach of Warranty Claims**

28         The implied warranty of merchantability requires that "every sale of consumer goods that

are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The implied warranty of merchantability requires that the goods "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label." *Birdsong*, 590 F.3d at 958 n.2. A "core test of merchantability is fitness for the ordinary purpose for which the goods are used." *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546 (2014). "Such fitness is shown if the product is 'in safe condition and substantially free from defects.'" *Id.* (quoting *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009)). A breach of the implied warranty of merchantability requires a plaintiff to show that the product does "not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). However, California courts generally reject the argument that a product is fit for ordinary use as long as it continues to provide its most basic function. *See, e.g.*, *Sloan v. GM, LLC*, 287 F. Supp. 3d 840, 879 (N.D. Cal. 2018) (rejecting argument that a "car is fit for ordinary use as long as it continues to provide transportation, irrespective of safety concerns.")

    Drake pleads that the emissions of gas stoves constitute a material safety-related defect. He alleges that Haier's stoves "emit air pollutants . . . at levels the EPA and World Health Organization have said are unsafe," especially "nitrogen oxides, which are gases that can worsen asthma and other lung diseases." Compl. ¶¶ 1, 16-21. And he asserts that, absent a warning, this creates a safety hazard because operating the stoves as intended for home cooking leads to dangerous concentrations of nitrogen dioxide in the home. Compl. ¶ 20. While Haier asserts that Drake has not alleged that his stove fails to perform as intended, Haier misses the mark because a product that poses a material safety hazard when used as intended is unmerchantable. *See Mocek*, 114 Cal. App. 4th at 406; *Sloan*, 287 F. Supp. 3d at 879. By alleging a material safety-related defect, Drake has adequately pleaded that his gas stove was unfit for ordinary use. He accordingly states a claim for breach of the implied warranty of merchantability, and Haier's motion to dismiss this cause of action is denied.

1	Because Drake does not address Haier's argument regarding the implied warranty of
2	fitness, Haier's motion to dismiss that cause of action is granted.

### 3. Compliance with Proposition 65

Proposition 65 prohibits companies from "intentionally expos[ing] any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning." Cal. Health & Safety Code § 25249.6. The chemicals subject to Proposition 65 are specifically identified in the applicable regulations. Cal. Code Regs. Tit. 27, § 27001 (listing Proposition 65 chemicals). Proposition 65 allows private parties to bring civil actions in the public interest if "the private action is commenced more than 60 days from the date that the person has given notice of the alleged violation" to the defendant, the California Attorney General, and the "district attorney, city attorney, or prosecutor in the jurisdiction in which the violation is alleged to have occurred." Cal. Health & Safety Code § 25249.7(d)(1). The notice must include "a certificate of merit" that affirms the party has "consulted with one or more persons with relevant and appropriate experience or expertise . . . regarding the exposure" and that "based on that information, the person executing the certificate believes there is a reasonable and meritorious case for the private action." *Id.* "California cases strictly enforce the notice requirements and hold that pre-filing notice is mandatory." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 790 (N.D. Cal. 2015) (discussing cases). Thus, "if a Plaintiff commenced an action under Proposition 65 without providing suitable statutory notice, the Plaintiff should not be able to maintain that action." *Id.* at 790. "Dismissal with prejudice would be proper, because improper notice cannot be retroactively cured." *Id.* (listing cases). The district court in *Sciortino* dismissed some, but not all claims relating to Proposition 65 chemicals. The court differentiated between claims that were "entirely derivative of an unspoken Proposition 65 violation" and those that were independent of the statute. *Id.* at 792. Ultimately, the court refused to dismiss claims where the only relevance of Proposition 65 was to "provide[ ] guidance as to a reasonable consumer's purchasing decisions in California." *Id.* at 794.

Here, Drake does not make any effort to contend that he complied with Proposition 65's pre-suit notice requirements. Instead, Drake posits that he was not obligated to comply with the

14

1  Proposition 65 requirements because his claims do not implicate the statute where the pollutant
2  that Haier should have warned about – nitrogen dioxide – is not a Proposition 65-listed chemical.
3  *See* Cal. Code Regs. Tit. 27, § 27001.  Drake's argument engages in inappropriate revisionism.
4  Drake alleges that Haier's gas stoves emit "air pollutants . . . linked to . . . cancer" and "poorer
5  birth outcomes," the same dangers Proposition 65 states it is intended to warn against.  Compl.
6  ¶¶ 1, 17, 19; Cal. Health & Safety Code § 25249.6.  Among the "pollutants" are "carbon
7  monoxide" (¶ 17), as well as benzene, hexane, and toluene (*see, e.g.*, articles cited at ¶ 1 n.3, ¶ 24
8  n.20),[1] which are Proposition 65-listed.  *See* Cal. Code Regs. Tit. 27, § 27001.  Drake emphasizes
9  nitrogen dioxide as the primary pollutant throughout his Complaint, and he attempts in his
10 opposition to gloss over the other pollutants referenced in the pleading.  Such narrow focus on
11 nitrogen oxide to the exclusion of others appears to be a deliberate effort to circumvent
12 Proposition 65's notice requirements.  The Court finds that Drake's claims are entirely derivative
13 of an unspoken Proposition 65 violation.  Drake accordingly runs afoul of Proposition 65's pre-
14 suit requirements, defects that cannot retroactively be cured.  Therefore, the Court must dismiss
15 Drake's claims under the UCL, CLRA, and FAL with prejudice.

16 Drake's claims for equitable relief arise under these same California consumer protection
17 statutes.  *See* ECF 27 at 33; *see also* Cal. Bus. & Prof. Code § 17203 (injunctive relief under the
18 UCL), Cal. Civ. Code § 1782 (same under the CLRA), Cal. Bus. & Prof. Code §17535 (injunctive
19 relief and restitution under FAL).  Because these claims are dismissed, the Court does not reach
20 the parties' arguments regarding whether Drake's prayer for equitable relief under such claims
21 must be dismissed.

## CONCLUSION

23 For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part
24 Defendant's motion to dismiss.  Drake's claims for violation of the UCL (Count 1), violation of
25 the FAL (Count 2), violation of the CLRA (Count 3), and fraudulent omission (Count 7) are all

---

[1] The Court considers these articles referenced in the Complaint and underlying Drake's claims to be incorporated by reference.  *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

United States District Court
Northern District of California

**DISMISSED WITH PREJUDICE**.  Drake's claim for violations of the consumer protection laws of other states outside of California (Count 5) is **DISMISSED** with prejudice because Drake lacks standing to bring them.  Drake's claims for breach of implied warranty pursuant to California's Song-Beverly Consumer Warranty Act (Count 4) is **DISMISSED** with leave to amend.  Drake's claim for breach of the implied warranty of merchantability (Count 6) is not dismissed, but his claim for breach of the implied warranty of fitness under the same count is **DISMISSED** based on Drake's failure to oppose the motion.  Drake's claim for unjust enrichment or quasi-contract (Count 8) is similarly **DISMISSED** for failure to oppose the motion.  Plaintiff may file an amended complaint no later than March 14, 2024.  No additional parties or claims may be added without leave of court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: February 13, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**